Leslie **MARTINEZ** and Sherry Lynn Ulsh, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**WEYERHAEUSER MORTGAGE COMPANY, Defendant.**

No. 94–1610–CIV.

United States District Court, S.D. Florida.

Aug. 30, 1996.

Daniel A. Edelman, Cathleen M. Combs, O. Randolph Bragg, Edelman & Combs, Chicago, IL, Charles McLeon Baird, Atlanta, GA, for plaintiffs.

Alan Jay Kluger, Andrew Paul Gold, Kluger, Peretz, Kaplan & Berlin, Miami, FL, David B. Kaplin, Brownstein & Zeidman, David J. Butler, Tacie H. Yoon, Elaine A. Panagakos, Swidler & Berlin, Washington, DC, for defendant.

### *ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT*

RYSKAMP, District Judge.

THIS CAUSE came before the Court upon Defendant Weyerhaeuser Mortgage Compa-

ny's Motion to Dismiss and For Partial Summary Judgment [DE 116–1, 116–2], dated October 20, 1995. In connection with the affidavits filed in support of and in opposition to that motion, Defendant Weyerhaeuser Mortgage Company filed a Motion to Strike the Affidavit of Edward C. Lawrence [DE 149], dated March 1, 1996 and Plaintiffs filed a Motion to Strike the Second Affidavit of Tina Fitch and motion to Grant them Leave to Respond to New Arguments in Weyerhaeuser's Reply [DE 153–1, 153–2]. These motions have been fully briefed and are ripe for adjudication.

## I. BACKGROUND

Plaintiff Leslie Martinez commenced this class action on August 4, 1994 against Defendant Weyerhaeuser Mortgage Company ("Weyerhaeuser") for alleged violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"). On September 13, 1995 Plaintiff filed an Amended Complaint—Class Action joining Sherry Lynn Ulsh as an additional representative Plaintiff. Ulsh joined in Martinez' TILA claims and also maintains that Weyerhaeuser violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA").

The allegations contained in the Amended Complaint arise out of separate credit transactions between Plaintiffs and Defendant Weyerhaeuser and the manner in which certain fees were disclosed in their credit documents as well as whether or not those fees were paid for services actually performed. On May 11, 1994 Plaintiff Martinez entered into a mortgage loan transaction with Weyerhaeuser to purchase a home. Likewise, on September 14, 1994 Plaintiff Ulsh entered into a mortgage loan transaction with Weyerhaeuser to purchase a home. Both mortgages were originated by Unlimited Mortgage Services ("Unlimited"), a mortgage broker, which offered them to Weyerhaeuser's Boca Raton, Florida office for underwriting and funding. (Fitch Aff., ¶ 2.) In connection with these transactions, Martinez and Ulsh both received Truth in Lending disclosure statements, an Itemization of Amount Financed, and HUD–1 Settlement Statements from Weyerhaeuser either at or before the closing of the loan.

In Counts I and II of the Amended Complaint, Martinez and Ulsh allege that Weyerhaeuser violated TILA and committed unfair and deceptive trade practices by excluding certain fees from the finance charge that were instead disclosed under the amount financed in their TILA disclosure documents. As a result of these practices, Plaintiffs claim in Count III that Weyerhaeuser was unjustly enriched. Plaintiff Ulsh additionally alleges in Count IV that Weyerhaeuser violated RESPA by making prohibited payments to her mortgage broker, Unlimited.

Weyerhaeuser has moved the Court to dismiss the Amended Complaint, in part, and to grant partial summary judgment in Weyerhaeuser's favor.

## II. STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint need only be "a short and plain statement of the claim," and as long as the pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," notice pleading has been satisfied. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). A motion to dismiss should not be granted unless the plaintiff can prove no set of facts in support of its claim entitling it to relief. *Id.* at 45–46, 78 S.Ct. at 101–02. When considering a motion to dismiss, the Court must accept all the plaintiff's allegations as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

The legal standard when considering a motion for summary judgment differs substantially from that of a motion to dismiss. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R.Civ.P. 56(c). The moving party bears the initial burden of showing, by reference to materials on record, that there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991). A moving party may discharge

this burden by exposing an absence of evidence to support the nonmoving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54.

If a moving party satisfies this burden, the nonmoving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," establish that a genuine issue of fact remains for trial. *Id.* at 324, 106 S.Ct. at 2553. A "genuine" dispute as to a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### III. DISCUSSION

As a preliminary matter, the parties have filed motions to strike the affidavits of Edward C. Lawrence and the Second Affidavit of Tina Fitch. Because these affidavits concern the Motion to Dismiss and Summary Judgment before the Court, the motions to strike must be resolved before reaching the merits.

### A. Motions To Strike.

■ The Federal Rules of Civil Procedure require that affidavits supporting or opposing a motion for summary judgment be made: (1) on personal knowledge of the affiant, (2) setting forth facts as would be admissible in evidence, and (3) affirmatively show that the affiant is competent to testify to the matters stated in the affidavit. Fed.R.Civ.P., 56(e). In interpreting this rule, the Court agrees that although "naked opinions" are admissible from experts under the Federal Rules of Evidence, "[a]dmissibility does not imply utility." *Mid–State Fertilizer Co. v. Exchange Nat. Bank of Chicago,* 877 F.2d 1333, 1339 (7th Cir.1989). To usefully support a motion for summary judgment, an affidavit must " 'set forth facts' and by implication in the case of experts (who are not 'fact witnesses') a process of reasoning beginning from a firm foundation." *Id.* (citing, *American Key Corp. v. Cole Nat. Corp.,* 762 F.2d 1569, 1579–80 (11th Cir.1985)). "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Mid–State,* 877 F.2d at 1339.

Applying these principles and reviewing the parties' briefs, the Court finds that portions of Edward C. Lawrence's affidavit violate Rule 56(e). Specifically the following is hereby stricken from Mr. Lawrence's affidavit: (1) the conclusion in paragraph three that Unlimited and Weyerhaeuser "charged unreasonable and excessive fees in the Ulsh transaction"; (2) the conclusion in paragraph 4 that Unlimited and Weyerhaeuser "jointly deceived Ms. Ulsh by disguising the size and nature of the settlement charges to make them appear reasonable and normal within the mortgage banking industry"; (3) and the assertion in paragraph 5 that "Unlimited did not disclose to Ms. Ulsh that she was paying an above market interest rate or explain other pricing and closing cost options." The Court finds that Mr. Lawrence failed to support these allegations with the proper foundation and will therefore not consider those assertions in adjudicating the motion for Partial Summary Judgment.

■ Next, addressing Plaintiffs' Motion to Strike the Second Affidavit of Tina Fitch, the Court again finds cause to strike. On December 15, 1995, Weyerhaeuser filed the affidavit of Tina Fitch, the branch manager of the Boca Raton, Florida office, in support of its Motion to Dismiss and for Summary Judgment. After Plaintiffs responded in opposition, Weyerhaeuser then attached the Second Affidavit of Tina Fitch to its reply brief filed February 29, 1996. Plaintiffs assert that the reply brief and the second affidavit of Tina Fitch raise arguments not made in either the initial motion or Plaintiffs' response.

Southern District of Florida Local Rule 7.1(C) provides that a reply memorandum "shall be strictly limited to rebuttal of matters raised in the memorandum in opposition without reargument of matters covered in the movant's initial memorandum of law. No further or additional memoranda of law shall be filed without prior leave of Court." Based on the plain language of this rule, the Court finds that the movant may not raise new arguments in a reply brief. Thus, the portions of Tina Fitch's second affidavit and the reply memorandum that raises new arguments, will be stricken. Because these argu-

ments will not be considered, it is not necessary for Plaintiffs to respond in opposition as requested in their March 27, 1996 motion.

### B. November 29, 1994 Motion to Dismiss.

On November 29, 1994, before Plaintiff Martinez amended her Complaint to join Sherry Lynn Ulsh as an additional representative Plaintiff, Weyerhaeuser filed a Motion to Dismiss which was fully briefed by both parties. In the Motion to Dismiss and for Partial Summary Judgment before the Court, Weyerhaeuser incorporates that Motion to Dismiss by reference. As Plaintiffs note, however, the claims contained in Counts II and III of the Amended Complaint are much broader than they were at the time Weyerhaeuser filed its November 1994 Motion to Dismiss. The Court finds Weyerhaeuser's incorporation of a motion briefed prior to the filing of a substantially altered Amended Complaint both confusing and wasteful of judicial resources. Nevertheless, the Court will address the November 1994 Motion to Dismiss. To the extent the issues are outdated by the Amended Complaint, the Court will deny Defendant's motion without prejudice.

### 1. Count I: are the challenged charges properly alleged to be finance charges?

In Count I, Plaintiff Martinez alleges that Weyerhaeuser improperly disclosed a cashier/wire fee, the Florida intangible tax, a review appraisal fee, and courier fees under the amount financed as opposed to as finance charges, thus understating the finance charge in violation of TILA in her Truth in Lending statement and her HUD-1 Settlement Statement. (Amnd.Compl., ¶ 14.) Plaintiff Ulsh makes identical allegations in Count I with respect to a cashier/wire fee and a review appraisal fee. *Id.* at ¶ 16. Weyerhaeuser has moved to dismiss these claims arguing that the challenged fees are not finance charges and thus were not im-

properly labeled in the credit documents in violation of TILA.

■ TILA defines the finance charge as, "charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605; 12 C.F.R. § 226.4(a). The Federal Reserve Board has concluded that "[c]harges imposed on the consumer by someone other than the creditor for services not required by the creditor" should be excluded from the TILA definition of finance charge "as long as the creditor does not retain the charges." Staff Commentary § 226.4(a)(3).[1] The Court finds this staff commentary both valuable and enforceable.

#### a. Courier fees.

■ Plaintiff Martinez claims that the courier fees in her TILA documents should have been disclosed as finance charges and that Weyerhaeuser's decision to include them in the amount financed constitutes a material misstatement. Martinez' HUD-1 Statement at lines 810 and 1305 shows that courier fees were paid to Unlimited, the mortgage broker, in the amount of $27.00 and to Blackwell & Walker, P.A. ("Blackwell") in the amount of $58.50. (Amnd.Compl., Exh. C.)

Weyerhaeuser argues that because the courier fees were imposed by third parties, namely Unlimited and Blackwell, that Plaintiffs have failed to make the necessary allegations to bring those charges within the TILA definition of a finance charge. Specifically, Weyerhaeuser contends that for the courier fees to be finance charges the Plaintiffs must have alleged that the courier fees were imposed by Weyerhaeuser, for services it required as a condition to providing credit, and that Weyerhaeuser retained the courier fees. Plaintiffs strongly disagrees that such allegations must be made to sustain their claim on a motion to dismiss.

---

1. Congress charged the Federal Reserve Board with the responsibility of implementing TILA. 15 U.S.C. § 1604 (West 1982 & Supp.1995). In response, the Board formulated Regulation Z ("Reg.Z"), Reg. Z, 12 C.F.R. §§ 226 *et seq.*, which have the force and effect of law. Along with Reg. Z, the Board prepares and periodically updates official staff commentary interpreting Regulation Z. The Court will accept Regulation Z and the Board's staff commentary, "absent some obvious repugnance to the statute." *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219, 101 S.Ct. 2266, 2274, 68 L.Ed.2d 783 (1981).

The Eleventh Circuit recently addressed whether courier fees are finance charges for purposes of TILA disclosure in the home mortgage industry. *Veale v. Citibank, F.S.B.*, 85 F.3d 577 (11th Cir.1996). In doing so, the *Veale* Court significantly narrowed and essentially abrogated *Rodash v. AIB Mortgage Co.*, 16 F.3d 1142 (11th Cir.1994). The Court concluded that where a creditor does not require the use of express mail and instead the borrower could have chosen to send the documents regular mail, then the express mail fee was not imposed as an incident to the extension of credit, as it was in *Rodash*, and thus is not a finance charge under TILA. *Id.* at 579. Similarly, pursuant to the Board's staff commentary, fees imposed by third parties for services not required by the lender where the lender does not retain the fee, are excluded from the TILA definition of a finance charge. Staff Commentary 226.4(a)(3).

It appears that although the challenged courier fees in this action come under the general definition of a finance charge, the circumstances under which they were imposed, by whom, and whether the creditor required those fees and retained the charges, will ultimately determine whether or not those fees should have been disclosed as finance charges under TILA. To state a claim, Plaintiff should have, at a minimum, alleged that Weyerhaeuser as opposed to Unlimited and Blackwell imposed the courier fee. Because it appears from the face of the disclosure documents that those fees were imposed by third parties, Plaintiff should have alleged that Weyerhaeuser required the use of the courier service as a condition to extending credit, that Plaintiff had no ability to send the documents regular mail, and that Weyerhaeuser retained the charges. Because Plaintiff has failed to make any of these allegations in the Amended Complaint, she does not state a claim with respect to the courier fees.

The Court realizes that the *Veale* decision was rendered after the Plaintiffs filed the Amended Complaint and that the TILA definition of a finance charge has been in a state of flux since the Eleventh Circuit issued *Rodash*. However, Plaintiff Martinez should have moved the Court for leave to supplement the Amended Complaint to set forth the necessary facts to sustain her TILA claims in light of the changes in the law. Fed.R.Civ.P., 15(d). The Court notes that Plaintiffs have been quite diligent in filing notices of additional authority to update the Court on recent opinions issued regarding their claims. In fact, Plaintiffs did so as recently as March 13, 1996.

The Court will thus not excuse the defects in the Amended Complaint due to subsequent changes in the law. Plaintiff should have supplemented the Amended Complaint to ensure that her claims were still viable. Because Plaintiff Martinez has failed to make the basic allegations to bring the courier fees within the TILA definition of a finance charge, the courier fees are hereby dismissed from Counts I, II, and III.

### b. The Florida intangible tax.

■ Weyerhaeuser next challenges Plaintiff Martinez' allegations in Count I regarding the mislabeling of the Florida intangible tax for purposes of TILA. It has been clearly settled in this Circuit that Florida's intangible tax is not a finance charge under the TILA definition and need not be disclosed as such. *Veale v. Citibank, F.S.B.*, 85 F.3d 577 (11th Cir.1996); *Nussbaum v. Mortgage Service America Co.*, 913 F.Supp. 1548 (S.D.Fla. 1995); *Pignato v. Great Western Bank*, 664 So.2d 1011 (4th DCA 1995), *rev. denied*, 673 So.2d 30 (1996). The Plaintiff's claims with respect to the Florida intangible tax are accordingly dismissed from Counts I, II, and III.

### c. Review appraisal fee and cashier/wire fee.

■ Weyerhaeuser finally contends that the review appraisal fee and the cashier/wire fee disclosed in the HUD–1 Settlement Statement are not finance charges. Weyerhaeuser argues that it did not require those services as an incident to providing credit and that TILA expressly excludes appraisal fees from the computation of the finance charge pursuant to 15 U.S.C. § 1605(e)(5). Plaintiffs argue that the appraisal fee must be "bona fide and reasonable" under 12 C.F.R. § 226.4(c)(7), to come under the appraisal fee exclusion and that Weyerhaeuser's appraisal fee cannot meet this standard.

Despite this argument in their response, Plaintiffs have failed to include in the Amended Complaint any allegations in Count I that the appraisal fee was not bona fide or that it was unreasonable. Their only objection with respect to this charge concerns its exclusion from the finance charge. The Court thus finds that Plaintiffs have again failed to allege a necessary element of the claim, this time with regard to the appraisal fee. The appraisal fees for both Plaintiff Ulsh and Martinez are accordingly dismissed from Counts I, II, and III.

In addition, the TILA Amendments specifically exclude appraisal fees from the computation of the finance charge. 15 U.S.C. § 1649(a)(1)(B). The Court has found the TILA Amendments both retroactive with respect to 15 U.S.C. § 1649 and constitutional. *O'Brien v. J.I. Kislak Mortgage Co.*, 934 F.Supp. 1348 (S.D.Fla.1996). For this alternative reason, the appraisal fee will be dismissed from the class action claims in Counts I, II, and III of the Amended Complaint.[2]

■ With respect to the $25.00 cashier/wire fee, the Court notes that this fee is disclosed on the HUD–1 Settlement Statement at line 1307 as going to Weyerhaeuser and not to a third party. As such, Plaintiff need not have made the specialized allegations regarding this fee that were required for the courier fee. Weyerhaeuser's motion to dismiss the cashier/wire fees is thus denied.

### d. Summary.

After reviewing Defendant's motion to dismiss Count I, the Court notes that only the cashier/wire fees remain pending. The Florida intangible tax, the review appraisal fees, and the courier fees have all been dismissed either because they are not finance charges as a matter of law or because the Plaintiffs failed to make the appropriate allegations concerning these charges to bring them within the TILA definition of a finance charge. Thus, Counts I, II and III with respect to the individual Plaintiffs, shall proceed with only the cashier/wire fees remaining.

### 2. Count II: standing.

In Count II, Plaintiffs allege that Weyerhaeuser violated §§ 17200 and 17500 of the California Business and Professions Code and similar statutes of all fifty states by understating the finance charge in connection with the mortgage transaction. Weyerhaeuser moves the Court to dismiss Plaintiff Martinez' claims under the deceptive trade practices acts of states other than California or Florida because Plaintiff lacks standing to assert those claims.

In her response, Plaintiff Martinez stated that she is not pursuing claims under any consumer protection statutes other than California. Based on this representation, the Court will not address the standing issue at this point and will deny Weyerhaeuser's motion to dismiss Count II. However, the Court will revisit this topic should either Plaintiff attempt to pursue claims that Weyerhaeuser violated statutes of all fifty states by understating the finance charge in connection with the mortgage transaction.

### 3. Count III: unjust enrichment.

■ In Count III, Plaintiffs allege that Weyerhaeuser is required to make restitution in an amount equal to the alleged misdisclosed charges. Weyerhaeuser argues that Count III should be dismissed because restitution is an equitable remedy and not a separate cause of action and further that Plaintiffs have failed to demonstrate that they have no adequate remedy at law.

■ The Court agrees that in Florida, unjust enrichment is an equitable remedy and is not available where an adequate legal remedy exists. *F.D.I.C. v. Gonzalez–Gorrondona*, 833 F.Supp. 1545 (S.D.Fla.1993) (citing *Bowleg v. Bowe*, 502 So.2d 71, 72 (Fla. 3d DCA 1987); *Liza Danielle, Inc. v. Jamko, Inc.*, 408 So.2d 735 (Fla. 3d DCA 1982)). To state a claim for unjust enrichment, plaintiffs must make this allegation clear in the complaint. *Gary v. D. Agustini & Asociados, S.A.*, 865 F.Supp. 818 (S.D.Fla.1994).

---

**2.** The Court notes that this point is moot because the class action claims in Counts I, II, and III have been stricken. The Court's May 9, 1996 Omnibus Order required that Defendant's Motion to Strike Plaintiffs' Amended Motion for Class Certification on Counts I–III be granted. As such, only the Plaintiffs' individual claims remain pending in Counts I, II, and III.

The Court finds that TILA provides an adequate remedy at law for most of the wrongdoing alleged in Count III. Plaintiffs, however, assert that Count III contains allegations of wrongdoing separate from the TILA violations. Plaintiffs have failed to state in the Amended Complaint that an adequate remedy at law does not exist to redress any of the alleged wrongdoing. It appears to the Court that the wrongdoing complained of in Count III could be entirely remedied through TILA claims, a fraud claim, and an unfair business practices claim.

Because Plaintiffs fail to allege that an adequate remedy at law does not exist, and the Court is not convinced that this is clear from the face of the Amended Complaint, Count III fails to state a claim for unjust enrichment and will be dismissed from the Amended Complaint.

### B. Weyerhaeuser's Motion to Dismiss and for Partial Summary Judgment.

■ Having disposed of the issues raised in Weyerhaeuser's November 1994 Motion to Dismiss, the Court will now address Weyerhaeuser's current Motion to Dismiss and for Partial Summary Judgement. It appears that Weyerhaeuser has failed to submit a statement of material facts in connection with its motion for partial summary judgment in violation of Local Rule 7.5. The Court agrees with the Plaintiffs that under these circumstances they need not file a statement of triable material facts. In addition, the Court warns the Defendant that the Local Rules will be given effect by this Court and further violations will not be tolerated. The Court will, nevertheless, reach the merits of this motion.

#### 1. Application of the TILA Amendments.

■ In September 1995, Congress passed and the President signed into law the Truth in Lending Act Amendments of 1995 ("TILA Amendments"), Pub.L. No. 104–29, 109 Stat. 271 (1995), to clarify TILA in light of the myriad of class action suits filed in reaction to *Rodash v. AIB Mortgage Co.*, 16 F.3d 1142 (11th Cir.1994). In part, the TILA Amendments establish retroactive limits on lender liability for transactions consummated prior to September 30, 1995. As noted, this Court has found the TILA Amendments both retroactive with respect to 15 U.S.C. § 1649 and constitutional. *O'Brien v. J.I. Kislak Mortgage Corp.*, 934 F.Supp. 1348 (S.D.Fla.1996). The Court, thus, need not address the arguments attacking the constitutionality of the TILA Amendments raised in Plaintiffs' opposition brief.

Although the TILA Amendments retroactively set limitations on liability for disclosure violations regarding the finance charge, Congress included specific exceptions. The relevant exemption for purposes of this action provides relief for "the named individual plaintiffs in any class action brought under this subchapter which was filed before June 1, 1995." 15 U.S.C. § 1649(b)(3). Thus, using Plaintiff Martinez in the present action as an example, because the case was filed on August 4, 1994, Martinez' individual claims are exempt from the TILA Amendment liability limitations, but the class action allegations are subject to the new tolerance levels.

Weyerhaeuser asserts that the TILA Amendments bar Plaintiff Ulsh's individual TILA claims in Count I because she was not named as an additional representative plaintiff in this action until September 13, 1995 and thus falls outside the individual representative plaintiff exception to the new liability limitations. 15 U.S.C. § 1649(b)(3). Ulsh, in turn, argues that the important date for purposes of the TILA Amendment exception is the date the class action was filed, August 4, 1994, and not the date she was joined. Ulsh contends that her individual claims are exempt from the new liability limitations because the original Class Action Complaint was filed before June 1, 1995.

In interpreting statutes, Courts must assume that Congress meant each word to have its common and ordinary meaning. *U.S. v. McLymont*, 45 F.3d 400, 401 (11th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 1723, 131 L.Ed.2d 581 (1995). In addition, unless ambiguous or leading to an absurd result, the plain meaning of the statute should control. *Id.* The provision under consideration here exempts from the TILA Amendment liability limitations "the named individual plaintiffs in any class action brought under this title which was filed before June 1, 1995." 15

U.S.C. § 1649(b)(3). From this language, it is clear to the Court that Congress intended the date upon which the individual plaintiffs in each class action brought suit to be the relevant exemption date.

Following Plaintiff Ulsh's logic, the June 1, 1995 cut off would be essentially unenforceable. Additional representative plaintiffs could join any one of the numerous ongoing TILA class action suits at any time and obtain the liability exemption for their individual claims. Given that the TILA Amendments were enacted to limit liability, this result would be absurd. The Court finds that Congress intended to exempt only the individual plaintiffs who were named parties to class action suits before June 1, 1995.

Having reached this conclusion, the Court finds that Plaintiff Ulsh's individual claims are not exempt from the TILA Amendment liability limitations pursuant to 15 U.S.C. § 1649(b)(3). Plaintiff Ulsh's individual TILA claims thus fall below the threshold tolerance level of $200.00. Ulsh is thus dismissed from Counts I, II, and III because the TILA Amendment liability provisions bar her claims.

### 2. RESPA claims.

Ulsh alleges in Count IV that several payments made to her mortgage broker, Unlimited, in connection with her credit transaction are prohibited by the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"). Plaintiff specifically objects to a $295.00 courier/processing fee and a $50.00 recertification fee listed on her HUD–1 Settlement Statement as paid from borrower's funds to Unlimited, and a $3,307.50 "par plus" pricing or "service release premium" paid by Weyerhaeuser to Unlimited. (Amnd.Compl., ¶ 79.) In the Amended Complaint, Ulsh makes general allegations that these fees duplicate other charges or constitute fees for services not actually performed or are merely for the referral of business. *Id.* at ¶ 78.

RESPA prohibits the payment of business referral fees and splitting charges in connection with federally related mortgage loan transactions. Section 2607 provides that:

**(a) Business referrals**

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

**(b) Splitting charges**

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(a) & (b); *see* 24 C.F.R. § 3500.14(g)(1)(iv). Specific exemptions are built into this statute for the payment of salaries or for services actually performed. The relevant exemption states that:

Nothing in this section shall be construed as prohibiting ... (2) the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed.

12 U.S.C. § 2607(c).

### a. Courier/processing fee and recertification fee.

Weyerhaeuser contends that the courier/processing fee and the recertification fee listed in Ulsh's HUD–1 Settlement Statement were compensation for services actually performed and thus fall within the RESPA exception to the prohibition of payments in relation to a federally related mortgage. 12 U.S.C. § 2607(a) & (b). In a sworn affidavit accompanying Weyerhaeuser's motion, Tina Fitch, the branch manager of Weyerhaeuser's Boca Raton, Florida office, explains the nature of these charges and asserts that services were provided in exchange for these payments. In response, Plaintiff Ulsh admits that the recertification fee was probably a payment for a service actually performed, but contests that services were provided in exchange for the processing fee and the courier fee. Plaintiff also contests the reliability of Tina Fitch's affidavit, asserting that she has no personal knowledge of the nature of these payments and has based the informa-

tion in her affidavit on receipts obtained from Unlimited. The Court finds the affidavit of Tina Fitch and the attached receipts useful in determining whether the challenged payments were in fact for services actually performed and are thus outside the strict RESPA prohibitions for payments pursuant to 12 U.S.C. § 2607(a) & (b).

■ Weyerhaeuser has brought forth evidence in the form of receipts showing that the recertification fee was paid in return for services rendered. (Fitch Aff., Exh. 2 & 3.) Plaintiff Ulsh's HUD–1 Settlement Statement at line 810 discloses that a $52.75 recertification/in file credit report fee was paid to Unlimited. In her sworn affidavit, Tina Fitch states that a $50.00 recertification fee was paid to Unlimited to recertify the initial appraisal on the mortgaged property in order to ensure that certain repairs had been completed. (Fitch Aff., ¶ 8.) To evidence this assertion, Fitch attached to her affidavit a receipt from Investors Appraisal Service, dated September 2, 1994 which states that Ulsh's property was reinspected and that appraisal services were rendered to Unlimited for a fee of $50.00. (Fitch Aff., Exh. 2.) In addition, Fitch alleges and attaches a receipt which indicates that Equifax billed Unlimited $2.75 to obtain a copy Ulsh's credit report. (Fitch Aff., Exh. 3.)

Considering these receipts and Fitch's affidavit, the burden has shifted to the Plaintiff to produce evidence that the recertification fees were not payments made for services actually performed. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Plaintiff, however, has brought forth no evidence that these receipts are forgeries, that the information they contain is inaccurate, or that these services were not actually performed. Plaintiff only argues that when viewed in light of the "par-plus" premium, these fees were excessive and duplicate other charges. These mere allegations are not enough to sustain Plaintiff's burden on summary judgment. Because Weyerhaeuser has shown that the recertification fees were paid in exchange for services performed for Unlimited and Plaintiff has brought forth no evidence to the contrary, Weyerhaeuser is entitled to summary judgment on the recertification fees.

■ In her affidavit, Tina Fitch also states that the $230.00 processing fee was a flat fee payable to Unlimited as compensation for the costs involved in processing the Ulsh loan. (Fitch Aff., ¶ 7.) Fitch alleges that this fee covered Unlimited's costs for photocopying, mailing, telephone calls, ordering and processing loan documents, as well as other services required to process the Ulsh loan. *Id.* The assertions made by Fitch in the affidavit support Weyerhaeuser's contention that the processing fee was paid in connection with services actually performed by Unlimited. The burden has thus again shifted to Plaintiff to bring forth evidence to the contrary and Plaintiff again fails to meet this burden. Summary judgment is thus appropriate on the processing fees, which were paid in exchange for services actually performed.

■ Finally, Fitch states in her affidavit that the $65.00 courier fee represents payments for expedited delivery services used by Unlimited to process the Ulsh loan. (Fitch Aff., ¶ 7.) In addition, it appears that Ulsh signed an "Authorization for Credit Report Charges and Courier Fees" expressly authorizing Unlimited to use courier services with respect to expediting the processing of her loan. (Fitch Aff., Exh. 4.)

The receipts presented in connection with these fees, however, do not total $65.00. (Fitch Aff., Exh. 1.) Fitch has produced a receipt from a messenger service for $5.00, and two Federal Express bills totaling $27.00 and $24.25, all related to the Ulsh loan. The documented courier services thus total only $56.25, leaving $8.75 in unaccounted for courier service fees. Although Fitch has attached a fourth receipt for courier services for Ulsh from Loan America to Unlimited, this receipt contains no payment amount. It would be inappropriate for the Court to assume that the remaining $8.75 in courier fees is attributable to this receipt. Thus, because Plaintiff has not brought forth evidence negating the presumption created by the courier receipts and the Fitch affidavit with respect to at least $56.25 of the courier fees, Weyerhaeuser is entitled to partial summary judgement on these fees. The unaccounted for courier fee of $8.75 remains a valid unex-

plained payment that potentially violates RESPA.

### b. Par plus premium.

■ Weyerhaeuser next argues that the par plus or yield spread premium of $3,307.50 paid by Weyerhaeuser to Unlimited in connection with the Ulsh loan did not violate RESPA. Weyerhaeuser states that this fee was paid to Unlimited because the Ulsh loan was originated at an above-par interest rate and that this practice is common in the industry. The payment of the par plus premium was disclosed to Plaintiff Ulsh at the closing on the HUD–1 Settlement Statement and on the Itemization of Amount Financed as required by 24 C.F.R. Pt. 3500, App. B, Ex. 12.

■ Regulation X[3] requires that "any other fee … received by the mortgage broker arising from the initial funding transaction, including a yield spread premium, is to be noted on the Good Faith Estimate and listed in the 800 series of the HUD–1 Settlement Statement." 24 C.F.R. Pt. 3500, App. B, Ex. 12. Weyerhaeuser asserts that because Regulation X recognizes the practice of paying yield spread premiums to mortgage brokers and regulates their disclosure, that the payment of a yield spread premium to Unlimited in connection with the Ulsh loan did not violate RESPA.

Plaintiff Ulsh argues that regardless of whether Regulation X provides for the disclosure of yield spread premiums, these fees must be legitimate, must not duplicate other charges, must be for services actually performed, and cannot simply constitute a masked payment for the referral of business. 12 U.S.C. § 2607; 24 C.F.R. §§ 3500.14(b), (c), & (g). In other words, Ulsh contends that merely labeling a fee a yield spread premium does not make that fee permissible under RESPA simply because the same term appears in Regulation X with disclosure instructions. Plaintiff Ulsh argues that the $3,307.50 payment to Unlimited characterized as a yield spread or par plus premium was not paid as compensation for an actual service, but was instead a reward for closing the Ulsh loan at an above-par interest rate in violation of RESPA. Ulsh also contends that this fee is unreasonably high.

After reviewing the HUD–1 Settlement Statement, the Amended Complaint, and the briefs, the Court believes that a there remains a genuine issue of material fact in this case as to whether the yield spread premium paid to Unlimited in this case was for services actually performed as opposed to a payment for the referral of business in violation of RESPA. The affidavit of Tina Fitch explains that the par plus premium was paid to Unlimited because of the above-par interest rate but fails to state what services, beyond obtaining a bad deal for Plaintiff Ulsh, Unlimited performed in exchange for this fee.

In addition, Plaintiff Ulsh's HUD–1 Settlement Statement shows that she paid Unlimited a recertification/in file credit report fee, an appraisal fee, a credit report fee, courier fees, and loan processing fees. The document also shows that Ulsh paid a number of additional fees incurred in connection with the mortgage transaction to other parties. It is unclear, then, what additional services the par plus premium was intended to compensate and leaves open the possibility that this fee duplicates those already paid by Ulsh.

Weyerhaeuser has failed to sustain its burden of demonstrating that no genuine issue of material fact exists with respect to the par plus premium payment. Thus, Weyerhaeuser's motion for summary judgment on the $3,307.50 yield spread premium will be denied.

### IV. CONCLUSION

THE COURT has considered the motion, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that:

---

3. Congress authorized the Department of Housing and Urban Development ("HUD") to formulate the rules, regulations, and exemptions necessary to implement RESPA. 12 U.S.C. § 2617(a). Like Regulation Z, Regulation X will be given force unless it appears that the promulgations are not reasonably related to the purpose of RESPA. *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973).

(1) Defendant Weyerhaeuser Mortgage Company's Motion to Dismiss and For Partial Summary Judgment [DE 116–1, 116–2] is hereby GRANTED, in part, and DENIED, in part, as noted in this Order.

(2) Defendant Weyerhaeuser Mortgage Company's Motion to Strike the Affidavit of Edward C. Lawrence [DE 149] is hereby GRANTED, in part.

(3) Plaintiffs' Motion to Strike the Second Affidavit of Tina Fitch [DE 153–1] is hereby GRANTED, in part.

(4) Plaintiffs' Motion to Grant them Leave to Respond to New Arguments in Weyerhaeuser's Reply [DE 153–2] is hereby DENIED.

(5) Defendant's Motion for a Rule 16 Conference and to Hold Amended Motion for Class Certification in Abeyance [DE 114] is hereby DENIED as moot. The parties may file an updated motion for Rule 16 conference if necessary following the issuance of this Order.

DONE AND ORDERED.