**Roger Allen PATTEE and Kimberly Ann Pattee, Plaintiffs,**

v.

**GEORGIA PORTS AUTHORITY; Douglas J. Marchand, individually and in his official capacity as Executive Director of the Georgia Ports Authority; and David A. Schaller, individually and in his official capacity as Deputy Executive Director of the Georgia Ports Authority, Defendants.**

**No. 406CV028.**

United States District Court, S.D. Georgia, Savannah Division.

Jan. 24, 2007.

A. Lee Parks, Andrew Y. Coffman, Eleanor Mixon Attwood, Steven E. Wolfe, Parks, Chesin & Walbert, PC, Atlanta, GA, for Plaintiffs.

Bradley J. Watkins, Whelchel, Brown, Readdick & Bumgartner, G. Todd Carter, Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, LLP, Brunswick, GA, for Defendants.

## *ORDER*

EDENFIELD, District Judge.

### I. *INTRODUCTION*

This case stems from Roger Pattee's termination as an officer with the Georgia Port Police (GPP), a department of the Georgia Ports Authority (GPA) charged with maintaining security and providing general law enforcement at Georgia's ports. Doc. # 1. Pattee outlined security flaws in the Port of Savannah's operations and, after receiving an apathetic response from GPP management at the Port, he emailed his opinions to a member of Georgia's Homeland Security Task Force. As a result, Georgia's Office of the Inspector General investigated the Port. Pattee claims his subsequent termination was in retaliation for his First Amendment-protected emails.

Pattee brought a state-court action alleging a violation of 42 U.S.C. § 1983 by the GPA, GPA Executive Director Douglas Marchand, and GPA Deputy Executive Director David Schaller. Doc. # 1, attach. 1 at 27. Pattee also claimed a violation of the Georgia Whistleblower Act, O.C.G.A. § 45–1–4(GWA), *id.* at 22–23, and his wife sought loss of consortium damages caused by the violation of her husband's rights. *Id.* at 27–28. They sought actual, compensatory, and punitive damages, as well as declaratory relief. *Id.* at 28–29. The defendants removed the action to this Court and moved for summary judgment. Doc. ## 1, 25. This Court partially granted, denied, and deferred that motion. Doc.

#55. Here it will address the deferred portion.

## II. BACKGROUND

Pattee served as a GPP officer at the Port of Savannah from 1997 until 3/8/04. Doc. #25 at 1. On at least five occasions during his tenure at the Port, Pattee raised concerns about security deficiencies to his commanding officer, Major Thomas C. Thompson. Doc. #44 at 1. Thompson's response was typically along the lines of "if you don't like it, leave, that's the way it's going to be, it's not going to change." *Id.* According to Pattee, "Thompson dismissed Pattee's concerns as routine employee complaints." *Id.*

Out of concern for the Port's security, Pattee sent an email in 3/03 to the Sheriff of Clayton County, Georgia, who was also a member of Georgia's Homeland Security Task Force. Doc. #44 at 2–3. Eventually the email was forwarded to the Office of the Inspector General of the State of Georgia. Doc. #25 at 1. In its last Order, this Court held that Pattee's emails were protected by the First Amendment, and that Pattee has raised a jury issue over whether he was fired in retaliation for sending the protected emails. Doc. #55.

However, the Court deferred ruling on defendants' summary judgment motion against Pattee's GWA claim, as well as his wife's loss of consortium claim. Doc. #55 at 15–16. The defendants presented a new argument in favor of summary judgment on the GWA claim in their final reply brief. Doc. #54. The Court deferred to allow the Pattees a chance to respond. Pattee responded, doc. #56, so the issue is now ripe.

## III. ANALYSIS

### A. "Reply" Briefs

■ Preliminarily, Pattee urges the Court to reject new arguments raised for the first time in reply briefs. "While the Court has a liberal briefing rule, *see Podger v. Gulfstream Aerospace Corp.,* 212 F.R.D. 609, 609 (S.D.Ga.2003) ('parties may file as many reply briefs as they want'), it has not yet clarified whether new arguments may be raised within such briefs without good cause." Doc. #55 at 15 n. 8.

Many district courts in the Eleventh Circuit reject new arguments raised in reply briefs. *See Fisher v. Ciba Specialty Chem. Corp.,* 238 F.R.D. 273, 316 n. 89 (S.D.Ala.2006) (holding that new argument in reply brief was barred; by making the argument "for the first time in their reply brief just two business days before the Hearing, plaintiffs ensured that opposing counsel would not have a fair opportunity to study or respond to this newly raised issue, which could have been presented in their principal brief"); *Martinez v. Weyerhaeuser Mortgage Co.,* 959 F.Supp. 1511, 1515 (S.D.Fla.1996) (quoting S.D. Fla. L.R. 7.1(C), which requires that reply briefs be "strictly limited to rebuttal of matters raised in the memorandum in opposition"); *Newsome v. Barnhart,* 444 F.Supp.2d 1195, 1203 n. 7 (M.D.Ala.2006) (refusing to consider new argument raised in reply brief where opposing party had no opportunity to respond).

In this District, *Podger* allows as many briefs as a party would like to file, and Local Rule 7.6 allows parties to "notify the Clerk and ... serve and file [a] reply within eleven (11) calendar days of service of the opposing party's last brief." S.D.Ga.L.R. 7.6. The proper course is to allow new arguments to be raised in reply briefs, placing the burden on opposing counsel to identify those new arguments and notify the Clerk pursuant to Local Rule 7.6 that a sur-reply is forthcoming. This is preferable to refusing to reach valid arguments—many of which will only be raised again during a trial which itself

might be avoided if the argument is reached—based on a ham-fisted, one-size-fits-all rule.[1]

The *Podger* policy, for that matter, also spares the Court the additional task of reaching motions for leave to file supplemental briefs, and furthers the judicial preference for reaching the merits rather than avoid them on briefing technicalities. *See Ciolino v. Ryan,* 2003 WL 21556959 at * 4 n. 6 (N.D.Cal.7/9/03) (unpublished); *see also Porter ex rel. McNeal v. Board of Police Com'rs,* 2004 WL 1534182 at * 3 (D.Kan.7/8/04) (unpublished).

At the same time the Court will view "new" arguments suspiciously, remain mindful of sandbagging, and liberally grant Rule 7.6 time extensions when sandbagging is suspected. Thus, here, the Court will reach defendants' new argument, having given the Pattees an opportunity to respond.

## B. GWA

■ Defendants' new argument highlights a substantive revision, effective 7/1/05, in the GWA. O.C.G.A. § 45–1–4(d)(2); *see* Georgia General Assembly—HB 665, http://www.legis.ga.gov/legis/2005_06/search/ hb665.htm (last visited 1/19/07). That revision redefined the bounds of speech protected by the GWA. Pre-amendment, the GWA prohibited retaliation "for making a complaint or disclosing information *to the public employer* [taking the employment action]."

O.C.G.A. § 45–1–4(d) (emphasis added) (pre–7/1/05).

The revised GWA is more expansive, prohibiting retaliation "for disclosing a violation of or noncompliance with a law, rule, or regulation *to either a supervisor or a government agency.*" O.C.G.A. § 45–1–4(d)(2) (emphasis added). Pattee's emails were sent to an outside agency via Sheriff Stanley Tuggle; Pattee did not send the emails internally to the public employer—the GPA. Thus, while Pattee's emails would be protected under the GWA's current definition of protected speech, they were not protected under the definition in place in 3/03, when he sent the emails, or in 3/04, when he was fired.[2]

Pattee attempts to circumvent this devastating argument by now alleging that his initial internal complaints to Major Thompson—complaints "to the public employer"—meet the requirements of the pre-amendment GWA. Doc. # 56 at 3. Pattee claims that (1) he made the internal complaints to Thompson; and (2) Thompson showed animus toward him because of the complaints, including by "using his routine briefings of GPP officers to denigrate Pattee." *Id.* at 4–5. Pattee, however, never links Thompson's alleged animus to Patee's termination. Pattee has never implicated Thompson as a possible defendant or alleged that Thompson had anything to do with his firing. He argues only that a jury could find that the evidence of Thompson's animus proves "the GPA's policy of stamping out internal dissent." *Id.*

---

1. Note that litigants have little incentive to hold arguments back until a later brief because they know that (a) judges and staff are human beings, and so there is always the risk that one's "best" arguments may "lose impact" when embedded within later filings; and (b) adversaries can freely reply on the merits *and* question whether sandbagging has been attempted.

2. As held in the Court's last Order, the pre-amendment version of the GWA applies to Pattee's claims. *See* doc. # 55 at 13–14; *Wausau Ins. Co. v. McLeroy,* 266 Ga. 794, 796, 471 S.E.2d 504 (1996) ("Generally statutes prescribe for the future and that is the construction to be given unless there is a clear contrary intention shown. A statute is never to be given a retroactive operation unless such construction is absolutely demanded." (quotes and cites omitted)).

at 5. It is not enough, however, that a state employer had a policy of stamping out internal dissent; a GWA plaintiff must allege that he dissented and was thereby stamped. Because Pattee lacks allegations supported by evidence linking Pattee's internal complaints to his termination, the Court grants defendants' motion for summary judgment on Pattee's GWA claim.

## C. Loss of Consortium

 Finally, the Court reaches defendants' arguments against Kimberly Pattee's loss of consortium claim. Doc. # 26 at 25. In Georgia, "a wife has an independent cause of action for the loss of consortium of her husband due to a tortious injury inflicted upon him." *Walden v. Coleman,* 105 Ga.App. 242, 243, 124 S.E.2d 313 (1962). Loss of consortium is therefore sometimes deemed a "derivative" claim, arising out of a tort committed against the plaintiff's spouse. *Canberg v. City of Toccoa,* 255 Ga.App. 890, 892, 567 S.E.2d 21 (2002) ("One spouse's claim for the loss of the other spouse's consortium derives from the right of the other spouse to recover for her injuries"). Thus, where summary judgment is granted on the primary claim, it is also proper on the spouse's loss of consortium claim. *See Behforouz v. Vakil,* 281 Ga.App. 603, 603, 636 S.E.2d 674 (2006). Though derivative of a plaintiff's spouse's primary claim, a loss of consortium claim is still "a 'separate' and 'distinct' claim of another person." *Stapleton v. Palmore,* 250 Ga. 259, 260, 297 S.E.2d 270 (1982).

Roger Pattee's sole remaining claim is a 42 U.S.C. § 1983 claim for a violation of his First Amendment rights. *See* doc. # 55 at 16; *supra* at 2–3. Defendants' only argument is that a federal § 1983 claim cannot provide the "tortious injury" required in Georgia to claim a loss of consortium. Doc. # 26 at 25.

Many courts have held that "[t]he spouse of an alleged federal civil rights victim is not permitted an ancillary cause of action for loss of consortium." *Tauriac v. Polaroid Corp.,* 716 F.Supp. 672, 673 (D.Mass.1989), *cited in Wojcik v. Mass. State Lottery Comm'n,* 300 F.3d 92, 96 n. 1 (1st Cir.2002); *see also Godby v. Electrolux Corp.,* 1994 WL 470220 (N.D.Ga. 1994) (refusing to allow loss of consortium claim derivative to a Title VII claim) (unpublished). "The plain words of [§ 1983] impose liability only for conduct which subjects, or causes to be subjected, the complainant to the deprivation of a right secured to him by the Constitution and laws of the United States." *Jenkins v. Carruth,* 583 F.Supp. 613, 616 (E.D.Tenn. 1982).

It has been noted, however, that these courts "all failed to recognize the distinction between bringing a claim *under* § 1983 and bringing a pendent state-law claim *alongside* the § 1983 claim." *Kinzer v. Metro. Gov't of Nashville,* 451 F.Supp.2d 931, 945 (M.D.Tenn.2006). Thus, in *Kinzer* the court reasoned that

[b]ecause Tennessee law permits a wife to maintain an action for loss of consortium against a tortfeasor who has caused injury to the husband, a derivative claim for loss of consortium is available in the context of § 1983 action brought by a person whose constitutional rights were violated in such a manner as to cause him personal injury. The wife should be permitted to recover damages for injuries that she personally incurred through the impairment of her marital relationship with her husband, in which relationship she has her own legally cognizable interest. Her claim is not brought under § 1983 but alongside it as a pendent state claim, over which this

Court has jurisdiction pursuant to 28 U.S.C. § 1367(a).

*Id.* at 946–47 (footnote and cite omitted).

This precise distinction was drawn by Judge Posner in *Niehus v. Liberio,* 973 F.2d 526, 532 (7th Cir.1992), the case relied on by the defendants here. In *Niehus,* the plaintiff sought to recover for loss of consortium *under the Constitution* via 42 U.S.C. § 1983, and the court rejected her claim; Judge Posner noted that "she could have brought a claim under state law for loss of consortium and attempted to append that claim to her husband's as a pendent-party claim." *Id.*[3]

Here Kimberly Pattee presents a state-law claim to recover for the alleged loss of consortium caused by the defendants' alleged violation of Roger Pattee's First Amendment rights. As discussed above, loss of consortium is an independent claim brought by a individual for damage to "a property right growing out of the marriage relationship, and includes the exclusive right to the services of the spouse and to the society, companionship, and conjugal affection of each other." *Sevcech v. Ingles Markets, Inc.,* 222 Ga.App. 221, 225, 474 S.E.2d 4 (1996) (quotes and cites omitted).

██ For the loss of consortium to be actionable, however, the injury to this marital property right must arise from a "tor-tious injury inflicted upon [the spouse]." *Walden,* 105 Ga.App. at 243, 124 S.E.2d 313. Thus, to succeed on a loss of consortium claim a "plaintiff must introduce evidence sufficient to pass muster on two fronts, these being (1) liability and (2) damages." *Smith v. Tri–State Culvert Mfg. Co.,* 126 Ga.App. 508, 510, 191 S.E.2d 92 (1972).

██ Defendants only challenge the first element: whether a valid § 1983 claim constitutes the tortious liability necessary to meet the first element of a loss of consortium claim in Georgia. To further distill the proper inquiry, the Court must determine whether, had defendants not removed this action to federal court, *see* doc. # 1, the Georgia court would have allowed a loss of consortium claim alleging a spouse's federal § 1983 claim as the first element.[4]

One court discussing the first element of the loss of consortium claim stated:

Suppose, for example, it should appear that the husband's injuries had resulted from a pure accident, or from nonnegligent act of another, certainly it could not be held that simply because the consortium is lost the wife may recover. And, so, before making any determination

---

**3.** It is also worth noting that the jurisdictional problems associated with pendent-party state claims, illustrated in *Ortega v. Schramm,* 922 F.2d 684 (11th Cir.1991) (affirming district court's conclusion that it lacked subject matter jurisdiction over state-law claims against defendant against whom plaintiff had no federal claims), were cured for suits filed after 12/1/90 by 28 U.S.C. § 1367(a). *Niehus,* 973 F.2d at 532.

**4.** It is clear that the Georgia court could have adjudicated the actual § 1983 claim; state courts have concurrent jurisdiction to resolve federal constitutional claims. *Yellow Freight System, Inc. v. Donnelly,* 494 U.S. 820, 823, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990) ("Un-der our system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." (cites and quotes omitted)); *Thomas v. Holt,* 221 Ga. App. 345, 471 S.E.2d 300 (1996) (§ 1983 claim heard in State court). Furthermore, as defendants only challenge the federal nature of the primary claim from which the loss of consortium claim derives, the Court need not address whether the specific § 1983 claim alleged in this case is otherwise adequate to support a Georgia loss of consortium claim (*e.g.,* because the tort does not involve physical injury to the plaintiff).

that the wife is entitled to recover the jury must determine whether the consortium has, in fact, been lost and, if so, whether the cause of the loss was such as to give rise to liability on the part of the defendants. One spouse's right of action for the loss of the other's society or consortium is a derivative one, stemming from the right of the other.

*Hightower v. Landrum,* 109 Ga.App. 510, 514, 136 S.E.2d 425 (1964).

Georgia courts thus view the loss of consortium as a separate and independent claim, the first element of which is tortious injury to the spouse. Here, the cause of Kimberly Pattee's alleged loss of consortium—defendants' alleged violation of her husband's First Amendment rights, causing "pain, suffering, and humiliation," doc. # 1, attach. 1 at 28—was not akin to "pure accident" or the "nonnegligent act of another." Rather, "the cause of the [alleged] loss was such as to give rise to liability on the part of the defendants." *Id.* Thus, Georgia courts would reject defendant's argument that a § 1983 claim cannot provide the first element of a loss of consortium claim; this Court must do likewise.

## IV. CONCLUSION

The deferred portion of defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART.** Doc. # 25; *see* doc. # 55 (deferring motion for summary judgment in part). Plaintiff Roger Allen Pattee's Georgia Whistleblower Act claim (doc. # 1, attach. 1 at 22–25, ¶¶ 92–103) is **DISMISSED WITH PREJUDICE.** Remaining for trial are Roger's First Amendment based, 42 U.S.C. § 1983 claim and Kimberly Ann Pattee's loss of consortium claim. Doc. # 1, attach. 1 at 27–28, ¶¶ 108–113. The parties are directed to file a Consolidated Pretrial Order within 25 days of the date that this Order is served.