United States Court of Appeals, Eleventh Circuit.

No. 94-4463.

Carl S. VEALE, Mary A. Veale, Plaintiffs-Appellants,

v.

CITIBANK, F.S.B., a Federal Savings and Loan fka Citicorp Savings of Florida, Inc., Defendant-Appellee.

June 19, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 92-8444-CIV-JAG), Jose A. Gonzalez, Jr., Judge.

Before EDMONDSON, Circuit Judge, and FAY and GIBSON[*], Senior Circuit Judges.

FAY, Senior Circuit Judge:

This appeal arises from the District Court's judgment as a matter of law in favor of the defendants. The plaintiffs, Carl and Mary Veale, brought suit under the Truth in Lending Act (TILA), alleging that Citibank did not provide the required material disclosures in connection with a home mortgage loan. Because Citibank did not violate TILA as a matter of law, we affirm.

I. BACKGROUND

In July of 1989, the Veales borrowed $361,800 from Citibank. The loan was secured by a first security interest in the Veale's primary residence. The Veale's used the money to pay off $24,825.98 previously owed to Citibank and to pay off two other mortgages retained by two other lenders. The rest of the loan was used to pay $269.05 to Epic Mortgage, a $723.60 intangible tax, a $53.40 recording fee, a $6.60 release fee, $582.70 in documentary

[*]Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

stamps, $2,571.00 in title insurance, a $21.00 Airborne fee, and $835.00 in prepaid finance charges. The Veales did not retain any of the loan proceeds.

According to the note, the loan was "payable in 84 installments, the first one of $3,582.87, 83 of $3,582.87, and 1 of $350,565.12." Thus the note obviously contained a typographical error, as it could not require both 84 and 85 payments. The Truth in Lending disclosure statement listed 84 payments: 83 plus the final balloon payment.

The Truth in Lending recision notice provided by Citibank gave the Veales until midnight of July 29, 1989 to rescind the transaction. On July 31, 1989, the Veales executed a Verification of Election not to Cancel.

In September of 1991, the Veales defaulted. Citibank sued for foreclosure in state court. In June of 1992, the Veales attempted to rescind the transaction under TILA, but Citibank rejected the demand for recision. Citibank purchased the property at the state court foreclosure sale.

The Veales brought suit in United States District Court, alleging that Citibank violated the TILA disclosure requirements and demanding recision. The Veales moved for summary judgment but the District Court denied the motion. At the close of the Veale's case during a non-jury trial, Citibank moved for judgment as a matter of law under Rule 52(c) of the Federal Rules of Civil Procedure.[1] The District Court granted the motion and entered

_____

[1]Citibank argues that the Veales waived certain issues raised in their summary judgment motion by not raising those issues at trial. This is simply not a fair characterization of

judgment for Citibank.

## II. STANDARD OF REVIEW

We review conclusions of law *de novo* but do not disturb findings of fact unless they are clearly erroneous. *See U.S. v. Thomas,* 62 F.3d 1332, 1336 (11th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 1058, 134 L.Ed.2d 202 (1996).

## III. ANALYSIS

### A. The $21 Federal Express Charge

The Truth in Lending Act requires a lender to disclose the amount financed and the finance charge in a loan transaction. 15 U.S.C. § 1638. In the TILA Disclosure Statement, Citibank included a $21 Federal Express charge in the Amount Financed but did not include that amount under the Finance Charge. The Veales contend that this was a material misstatement.

In *Rodash v. AIB Mortgage Company,* 16 F.3d 1142 (11th Cir.1994) this Court held that the Federal Express fee at issue was a transaction charge, imposed by the lender as an incident to the extension of credit. As such, it had to be included in the Finance Charge.

In this case, however, we are not convinced that the Federal Express fee was required by Citibank. If the borrower can choose

---

what occurred. The issues were squarely before the court at trial through the pre-trial stipulation, through certain exhibits presented by the Veales, and through the argument of both counsel. Counsel for the Veales stated, "Your Honor, in light of your ruling on the summary judgment motion, we will rest." Citibank's counsel moved for a directed verdict and stated, "Judge, there were two issues before Your Honor this morning that you had not disposed of before ..." Moreover, the District Court addressed all the issues in his final order. Thus the pre-trial rulings were incorporated into the trial judgment.

to avoid the Federal Express fee by having the documents sent via regular mail, then the fee is not imposed as an incident to the extension of credit. *See Berryhill v. Rich Plan of Pensacola,* 578 F.2d 1092, 1099 (5th Cir.1978). The Veales did not produce any evidence that Citibank required the fee before it would extend credit to the Veales. To the contrary, although not covered as a specific finding of fact, it appears in this case that the delivery charge was the result of expediting the pay outs to the other financial institutions in an effort to save the Veales additional interest expense. Since the Veales could have chosen not to pay the Federal Express fee and the bank did not require it, then the fee was not imposed as an incident to the extension of credit and need not be included in the Finance Charge. Unlike *Rodash,* the charge here was not incidental to the extension of credit.

## B. The Florida Intangible Tax

On the TILA Disclosure Statement, Citibank did not include the Florida intangible tax in the Finance Charge. This Court has held that the Florida intangible tax is a finance charge payable by the consumer as an incident to the extension of credit. *Rodash,* 16 F.3d at 1148. Of course, we are bound by *Rodash;* however this Court in *Rodash* was attempting to apply Florida law as Florida courts would. In matters of state law, federal courts are bound by the rulings of the state's highest court. *Huddleston v. Dwyer,* 322 U.S. 232, 236, 64 S.Ct. 1015, 1017–18, 88 L.Ed. 1246 (1944). If the state's highest court has not ruled on the issue, a federal court must look to the intermediate state appellate courts. *Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 177-78, 61 S.Ct.

176, 177-79, 85 L.Ed. 109 (1940).

When this Court decided *Rodash,* no intermediate appellate court in Florida had ruled on the issue. Since then, a Florida court has ruled on the issue, and decided it differently than this Court anticipated. In such a situation, we must look to the Florida court's ruling. *See Roboserve, Ltd. v. Tom's Foods, Inc.,* 940 F.2d 1441, 1451 (11th Cir.1991).

Under TILA, a tax is not a finance charge if it is prescribed by law and paid to a public official for perfecting a security interest. 12 C.F.R. § 226.4(e)(1). Thus the issue in this case is whether Florida law requires the intangible tax for perfecting a security interest. In *Pignato v. Great Western Bank,* 664 So.2d 1011 (Fla. 4th DCA 1995), the court held that the Florida intangible tax is prescribed by law and paid to a public official for perfecting a security interest. For that reason, we must conclude that the Florida intangible tax is not a finance charge.

C. The Required Number of Payments on the Disclosure Statement

According to the note signed by Citibank and the Veales, the loan was "payable in 84 installments, the first one of $3,582.87, 83 of $3,582.87, and 1 of $350,565.12." Thus the note obviously contained a typographical error, as it could not require both 84 and 85 payments. Such an error must be construed against Citibank, *Landale Enterprises Inc. v. Berry,* 676 F.2d 506, 508 (11th Cir.1982), and so the note must be read to require only 84 total payments. The Truth in Lending disclosure statement listed 84 payments (83 plus the final balloon payment) and accurately reflected the Veales' obligations. This typographical error in the

note does not rise to the level of a TILA violation particularly when the disclosure statement is correct.

### D. The Recision Notice Form

The Truth in Lending recision notice provided by Citibank gave the Veales until midnight of July 29, 1989 to rescind the transaction. This notice was based on the form in Appendix H-8 of Regulation Z of the Federal Reserve Board Rules and Regulations Relating to Truth in Lending. 12 C.F.R. § 226.1 et seq.

The H-8 form does not apply perfectly to the Veales' situation, because they already owed Citibank money and Citibank already had a mortgage on their home. Thus Citibank would still hold a mortgage on the home even if the Veales elected to rescind the current transaction; the Veales did not have the right to rescind the entire security interest. Ideally, because no model form applied perfectly to this transaction, Citibank should have provided a nonstandard notice form. *See In re Porter,* 961 F.2d 1066, 1076 (3rd Cir.1992). However, TILA does not require perfect notice; rather it requires a clear and conspicuous notice of recision rights. *See Rodash,* 16 F.3d at 1146.

The H-8 form stated: "You have a legal right under federal law to cancel *this* transaction.... If you cancel the transaction, the (mortgage/lien/security interest) is also canceled." 12 C.F.R. Pt. 226, Appendix H (emphasis added). We hold that under these particular facts the H-8 form provides sufficient notice that the current transaction may be canceled but that previous transactions, including previous mortgages, may not be rescinded.

In the *Porter* case, the Third Circuit held that the H-8 form

did not provide sufficient notice of recision rights in a refinancing and consolidation transaction such as this one. *See Porter,* 961 F.2d at 1077. The court acknowledged that the H-8 form could be read as saying that the recision right only applied to the current transaction, and thus did not apply to previous security interests in the property. *Id.* However, the court in *Porter* also believed the form could be read to say that the recision right applied to the old loan money as well as the new loan money and to the old mortgages as well as the new mortgage. *Id.* Thus the court concluded that the H-8 form did not clearly and accurately notify the borrower of her right to recision.

We respectfully disagree. As we noted earlier, although the H-8 form does not apply perfectly to the Veales' situation, TILA does not require perfect notice; rather it requires a clear and conspicuous notice of recision rights. *See Rodash,* 16 F.3d at 1146. We find the H-8 form to be reasonably clear when applied to the particular facts involved in this case; it provides sufficient notice that the current transaction may be canceled but that previous transactions, including previous mortgages, may not be rescinded. Such meets the requirements of the law.

### E. Monthly Mortgage Payment

The Veales presented evidence at trial that Citibank miscalculated the mortgage monthly payments. The Veales' expert testified that his analysis, utilizing a special software program, resulted in a different monthly payment. However, the expert also testified that when he used other calculation tools widely used in the financial industry, the resulting monthly payment was the same

as Citibank's calculated payment.  Using those other calculation tools also resulted in the same finance charge, amount financed, and total of payments reported by Citibank.  Certainly the trial court's findings are not clearly erroneous;  the record supports the conclusion that the computations are correct.

## IV. CONCLUSION

Because Citibank did not violate the Truth in Lending Act, the judgment of the District Court is hereby AFFIRMED.