695 So.2d 805 (1997)
GREAT WESTERN BANK, a Federal Savings Bank f/k/a Great Western Savings, Appellant/Cross-Appellee,
v.
Garrett D. SHOEMAKER, Appellee/Cross-Appellant.
No. 94-04338.
District Court of Appeal of Florida, Second District.
May 16, 1997.
Rehearing Denied June 19, 1997.
*806 Steven Ellison of Broad and Cassel, West Palm Beach, for Appellant/Cross-Appellee.
James A. Bonfiglio, Boynton Beach, for Appellee/Cross-Appellant.
FRANK, Acting Chief Judge.
Great Western Bank (Great Western) has appealed from a final judgment in which the trial court, pursuant to the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667 (1994), assessed statutory damages and rescinded the variable rate mortgage agreement Great Western had with Garrett Shoemaker. Shoemaker has cross-appealed claiming he is entitled to relief from other TILA violations. In accord with Beach v. Great Western Bank, 692 So.2d 146 (Fla.1997), we hold that Shoemaker's right to rescind the agreement expired at the end of the third year following its execution.[1] Thus, consistent with Beach, rescission was not capable of revival as a defense in recoupment. Moreover, we hold that the award of statutory damages was erroneously predicated upon charges which were properly excluded from the calculation of the total prepaid finance charge.
The factual backdrop may be summarized as follows:
In 1986, Great Western and Shoemaker executed a $200,000 variable rate mortgage secured by Shoemaker's primary residence. Prior to execution, Great Western delivered various financial disclosure documents to Shoemaker in compliance with TILA. One of the documents, denominated the "itemization of amount financed," notes the assessment of a "total prepaid finance charge" (finance charge) in the amount of $3,766.43. The same document reflects a separate charge for governmentally required fees in the total amount of $717, but none of those fees was included in the finance charge.[2] Moreover, the finance charge did not include a $14 Federal Express fee which was charged to Shoemaker for the delivery of funds to a predecessor mortgagee.
In 1993, Shoemaker defaulted and Great Western initiated a foreclosure action. Shoemaker's answer raised various defenses under TILA. The proceedings concluded with an amended final judgment determining that Great Western violated TILA by failing to include in the finance charge a $400 intangible tax and the $14 Federal Express fee. Other asserted TILA violations were found to be without merit. Shoemaker was permitted to rescind the agreement, raised as a defense in recoupment, and to recover statutory damages. Although we are compelled to vacate, in part, the amended final judgment, we note that the issues it has resolved have been clarified by recent decisions.
The purpose of TILA is to provide consumers with sufficient information such that "the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a) (1994). Consistent with this purpose, consumers may rescind a credit agreement in the circumstances where the lender has failed to make all material disclosures. Such "right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first...." 15 U.S.C. § 1635(f) (1994). Despite the plain language of section 1635(f), Shoemaker convinced the trial court that rescission may be exercised outside the three-year *807 limit when asserted as a defense in recoupment. The availability of such relief, Shoemaker contends, is necessary to achieve the degree of consumer protection intended by Congress.[3] Such intent, he contends, is evidenced by section 1640(e):
This subsection does not bar a person from asserting a violation of this title ... in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.
The Florida Supreme Court rejected this reasoning in Beach and specifically noted the absence of a savings clause in section 1635(f). The court held that section 1635 "mirrors a statute of repose" and "unambiguously express[es] Congress's intent to extinguish the statutory right of rescission three years after the transaction's closing." Beach, 692 So.2d at 152. The clarity of the Congressional intent is not obscured by the inclusion of a savings clause in section 1640(e). Beach, 692 So.2d at 151-52 ("[w]hen the legislature has used a term ... in one section of the statute but omits it in another section of the same statute, we will not imply it where it has been excluded") (quoting Leisure Resorts, Inc. v. Frank J. Rooney, Inc., 654 So.2d 911, 914 (Fla.1995)). Accordingly, Shoemaker's attempt to rescind the mortgage must fail.
Although such relief is not time barred, we must also vacate the award of statutory damages as we can discern no violation of TILA's requirements warranting that remedy. The trial court, compelled by the decision in Rodash v. AIB Mortgage Co., 16 F.3d 1142 (11th Cir.1994), with which it expressed some misgiving, determined that Great Western's failure to include the Federal Express fee and Florida's intangible tax in the finance charge violated TILA. The Eleventh Circuit has since receded from Rodash. Veale v. Citibank, F.S.B., 85 F.3d 577 (11th Cir.1996). In any event, Rodash was not binding upon the trial court.
The $14 Federal Express fee assessed to Shoemaker was incurred by the title company for the purpose of transmitting a check to a predecessor mortgagee. The method of transmittal was determined by the title company; there is no indication that Great Western required such method or that Great Western retained the fee. The expedience benefited all parties, including Shoemaker, who avoided owing further interest to the predecessor mortgagee. These facts fall beyond the concerns expressed in Rodash and are indistinguishable from the factual setting in Veale. Accordingly, we hold that the Federal Express fee "was not imposed as an incident to the extension of credit and need not be included in the finance charge." Veale, 85 F.3d at 579; see also Cowen v. Bank United of Texas, FSB, 70 F.3d 937, 942-43 (7th Cir.1995); 12 C.F.R. § 226.4(a) (Supp. I 1996) (Official Staff Interpretation).
Finally, we agree with the holding in Pignato v. Great Western Bank, 664 So.2d 1011 (Fla. 4th DCA 1995), that Florida's intangible tax, section 199.133, Florida Statutes (1995), may be excluded from the finance charge because it is prescribed by law, paid to public officials, and is necessary for the perfection of a security interest. 15 U.S.C. § 1605(d)(1) (1994); Regulation Z, 12 C.F.R. § 226.4(e)(1) (1996). Furthermore, we find that the tax was sufficiently itemized, albeit as a total sum of fees paid to governmental bodies, to permit its exclusion from the finance charge. See Mackey v. Household Bank, F.S.B., 677 So.2d 1295 (Fla. 4th DCA 1996); Veale, 85 F.3d at 580.
We have reviewed the matters raised on cross-appeal and affirm the amended final judgment with respect to Shoemaker's claim of TILA violations. We vacate, however, those portions of the amended final judgment adversely affecting Great Western and remand for further proceedings consistent with this opinion.
LAZZARA and QUINCE, JJ., concur.
NOTES
[1] Our decision in this matter has been delayed, with the parties' agreement, pending the Florida Supreme Court's review of Beach v. Great Western Bank, 670 So.2d 986 (Fla. 4th DCA 1996), in which the Fourth District certified the following question as one of great importance:

UNDER FLORIDA LAW, MAY AN ACTION FOR STATUTORY RIGHT OF RESCISSION PURSUANT TO THE TRUTH IN LENDING ACT, 15 U.S.C.A. SECTION 1635, BE REVIVED AS A DEFENSE IN RECOUPMENT BEYOND THE THREE-YEAR LIMIT ON THE RIGHT OF RESCISSION SET FORTH IN SECTION 1635(f)?
The Florida Supreme Court has answered the certified question in the negative. Beach, 692 So.2d at 146-48.
[2] The TILA documentation reflects a total $717 charge for fees paid to public officials without further itemization. The clerk of circuit court's receipt of this amount, found on the mortgage deed itself, indicates satisfaction of the following: a $17 recording fee, a $300 document stamp charge, and a $400 intangible tax charge.
[3] Shoemaker's argument has been persuasive in other jurisdictions. See Federal Deposit Ins. Corp. v. Ablin, 177 Ill.App.3d 390, 126 Ill.Dec. 694, 532 N.E.2d 379 (1988); Dawe v. Merchants Mortgage & Trust Corp., 683 P.2d 796 (Colo. 1984).