PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

EDWARD B. WATKINS,

     *Plaintiff-Appellant,*

v.

SUNTRUST MORTGAGE,
INCORPORATED,

     *Defendant-Appellee.*

No. 10-1915

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, Chief District Judge.
(3:10-cv-00098-JRS)

Argued: October 27, 2011

Decided: December 14, 2011

Before NIEMEYER, WYNN, and DIAZ, Circuit Judges.

---

Affirmed by published opinion. Judge Niemeyer wrote the majority opinion, in which Judge Diaz joined. Judge Wynn wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Henry Woods McLaughlin, III, LAW OFFICE OF HENRY MCLAUGHLIN, P.C., Richmond, Virginia, for Appellant. Mark C. Shuford, KAUFMAN & CANOLES,

P.C., Richmond, Virginia, for Appellee. **ON BRIEF:** Matthew B. Chmiel, KAUFMAN & CANOLES, P.C., Richmond, Virginia, for Appellee.

---

## OPINION

NIEMEYER, Circuit Judge:

The issue presented is whether a lender violates the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), in providing notice to a borrower who is refinancing his mortgage of the right to rescind the transaction, using a form of notice substantially similar to Model Form H-8 in the Appendix to Regulation Z, 12 C.F.R. pt. 226, rather than using Model Form H-9, which was designed for refinancing transactions.

The district court dismissed the borrower's complaint for failure to state a claim upon which relief could be granted, concluding that although Model Form H-8 is somewhat different from Model Form H-9, the use of Model Form H-8 in a refinancing transaction did not amount to a TILA violation.

We agree. Model Form H-8 includes all of the information required by TILA and Regulation Z to advise borrowers of the right to rescind a consumer credit transaction, including a refinancing transaction, and accordingly we affirm.

I

Edward Watkins and Danielle Watkins refinanced the loan on their house in Richmond, Virginia, with a new loan from SunTrust Mortgage, Inc., secured by a deed of trust on their house. SunTrust had also been the lender on the Watkinses' prior loan. At the closing of the refinancing transaction on May 7, 2007, SunTrust gave the Watkinses written notices of their right to rescind the transaction, using a form of notice

that was substantially similar to Form H-8 ("Rescission Model Form (General)"), as included in the Appendix to Regulation Z, 12 C.F.R. pt. 226. Model Form H-8 contained all of the information specified in TILA and Regulation Z for disclosure of the right to rescind a secured consumer credit transaction, but it did not include some language specific to refinancing transactions, which is included in Model Form H-9.

Some 18 months after closing, when the Watkinses had fallen behind in payments on their loan, SunTrust scheduled a foreclosure sale of the house for the end of December 2009. By letter dated December 14, 2009, the attorney for Edward Watkins, who was then separated from his wife, announced that Watkins was rescinding the May 7, 2007 refinancing transaction because SunTrust had "provided the Watkinses notices of right to cancel applicable to a new extension of credit by a new creditor, whereas this was an extension of additional credit by an existing creditor with an existing lien on the home." The letter explained:

> Attached to this letter is a copy of Exhibit H-9 to Regulation Z (promulgated by the Federal Reserve Board) which provides the proper notice of right to cancel in a credit transaction involving a new extension of credit by an existing creditor. . . . The notice of right to cancel you provided to the Watkinses . . . did not set forth proper language such as set forth in Exhibit H-9 to Regulation Z for new extensions of credit by existing creditors. . . . Rather, the notice you provided to the Watkinses was based on Exhibit H-8 to Regulation Z, for credit transactions by an entirely new creditor.

The letter claimed that SunTrust's use of Form H-8 in lieu of Form H-9 was "a material violation of TILA disclosure requirement[s]."

When SunTrust failed to take steps to rescind the transaction, Edward Watkins commenced this action under TILA, seeking a declaratory judgment that he was entitled to rescind the May 7, 2007 refinancing transaction and an award of statutory damages in the amount of $2,000.

SunTrust filed a motion to dismiss Watkins' complaint under Federal Rule of Civil Procedure 12(b)(6), asserting that the disclosures that SunTrust provided to the Watkinses fully complied with the requirements of TILA and Regulation Z, albeit through Model Form H-8 rather than Model Form H-9. SunTrust claimed that Model Form H-8 provided the Watkinses with all of the information required by TILA to inform them of the right to rescind. SunTrust suggested that Watkins' attempt to rescind after facing foreclosure was "plainly nothing more than a transparent, and legally improper, attempt to avoid foreclosure."

The district court granted SunTrust's motion, explaining:

> While it would seem obvious that a lender would be well advised to use a Model Form H-8 in a new extension of credit and Model Form H-9 when refinancing an existing mortgage, the Court cannot conclude that a lender's use of one form in place of another, without more, is in and of itself a violation of the TILA. Since Watkins has not alleged that the disclosures made at the time of the refinancing were otherwise deficient, the Court must conclude that he has failed to show his entitlement in either law or fact, to the relief he seeks.

From the district court's order dismissing the case, dated July 15, 2010, Watkins filed this appeal.

II

To facilitate the "informed use of credit," the Truth in Lending Act requires lenders "clearly and conspicuously" to

make a number of disclosures to borrowers, including the disclosure of the borrowers' right to rescind a consumer credit transaction. 15 U.S.C. §§ 1601(a), 1635(a). TILA provides that a borrower has the right to rescind a consumer credit transaction in which the borrower gives the lender a security interest in the borrower's principal dwelling. The right to rescind extends "until midnight of the third business day" after the closing of the transaction or after delivery of TILA-required disclosure forms, *id.* § 1635(a), but if the required disclosures are not delivered to the borrower, the borrower's right to rescind expires three years after closing, *id.* § 1635(f).

TILA requires the Federal Reserve Board to promulgate regulations to carry out the purposes of the Act, including "model disclosure forms" to "facilitate compliance with the disclosure requirements." 15 U.S.C. § 1604(b). But TILA also provides that "[n]othing in this subchapter may be construed to require a creditor [in giving notice of the right to rescind] to use any such model form or clause prescribed by the Board under this section." *Id.*

As directed, the Board promulgated Regulation Z, 12 C.F.R. pt. 226, in which it itemized the notice requirements for disclosing the right of rescission. Regulation Z provides that the notice of the right to rescind must "conspicuously disclose" the following elements:

(i)   The retention or acquisition of a security interest in the consumer's principal dwelling.

(ii)  The consumer's right to rescind the transaction.

(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(iv)  The effects of rescission, as described in paragraph (d) of this section.

(v)   The date the rescission period expires.

12 C.F.R. § 226.23(b)(1); *see also* 15 U.S.C. § 1635(a), (b). The "effects of rescission," as described in clause (d) of § 226.23, are that rescission (1) voids the transaction, including the security interest created by it; (2) entitles the borrower to a refund of all amounts, including finance charges, paid in connection with the transaction; and (3) requires the borrower, after the lender has carried out its obligations in rescission, to refund any money or property that the borrower received as a result of the transaction. *See* 12 C.F.R. § 226.23(d). In Appendix H to Regulation Z, the Board provides two model forms for rescinding "closed-end transactions"—Model Form H-8 ("Rescission Model Form (General)") and Model Form H-9 ("Rescission Model Form (Refinancing with Original Creditor)").[1]

Model Form H-8, which is the "general" model form for rescinding closed-end secured consumer credit transactions, provides as follows:

NOTICE OF RIGHT TO CANCEL

Your right to cancel

You are entering into a transaction that will result in a [mortgage/lien/security interest] [on/in] your home. You have a legal right under federal law to cancel this transaction, without cost, within three business

---

[1]The dissenting opinion seems to assume that use of Model Form H-8 is "the appropriate model form in Appendix H promulgated by the Federal Reserve Board for *new borrowers*." *Post* at 20 (emphasis added); *see also post* at 21. But nothing supports that assertion. Form H-8 is the "general" form included for rescinding closed-end secured consumer credit transactions. *See* App' H to Reg. Z, 12 C.F.R. pt. 226. We cannot conclude that a "general" form must be limited in use to transactions with "new borrowers."

days from whichever of the following events occurs last:

(1)   the date of the transaction, which is _____; or

(2)   the date you received your Truth in Lending disclosures; or

(3)   the date you received this notice of your right to cancel.

If you cancel the transaction, the [mortgage/lien/security interest] is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the [mortgage/lien/security interest] [on/in] your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

How to Cancel

If you decide to cancel this transaction, you may do so by notifying us in writing, at (creditor's name and business address).

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of (date) (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____

Consumer's Signature Date

This form contains all of the information required by TILA and Regulation Z to disclose the right to rescind a secured consumer credit transaction. *See* 15 U.S.C. § 1635(a), (b); 12 C.F.R. § 226.23(a), (b), (d).

Model Form H-9, designated for rescinding a transaction "Refinancing with Original Creditor," provides essentially the same information as does Model Form H-8, but it also includes two additional sentences to reflect that the transaction is a refinancing. First, instead of Form H-8's disclosure that the borrower is "entering into a transaction that will result in a security interest in your home," Form H-9 provides that "[y]ou are entering into a new transaction to increase the amount of credit previously provided to you." Second, Form H-9 adds a sentence, "If you cancel this new transaction, it will not affect any amount that you presently owe."

It is undisputed that the Watkinses' May 7, 2007 loan transaction was a refinancing involving the same creditor that

extended credit to the Watkinses on their prior loan. It is also undisputed that at the closing of the transaction, SunTrust provided the Watkinses with a disclosure of their right to rescind that was substantially similar to Model Form H-8 and that did not include the two additional sentences included in Model Form H-9.

Watkins contends that SunTrust's use of Form H-8 to disclose the right of rescission gave him inadequate notice of his right of rescission. He argues essentially that the notice of right to rescind a *refinancing transaction* must contain some advice to the borrower that a rescission will only affect the *new amount financed* and must also disclose that if the borrower rescinds, the borrower's obligations will revert to the preexisting loan. As he states:

> There are substantial differences between the notice of right to cancel for a loan from a new lender and the notice of right to cancel for extension of new credit by an existing creditor. If the loan is an extension of new credit by an existing creditor, as here, the debtor must be told that if the debtor rescinds, the debtor can go back to the pre-existing loan. The notice of right to cancel which Sun Trust gave to Watkins and his wife told them that if they rescinded, the entire transaction was canceled. It did not tell them, and therefore did not tell Watkins, that he could rely on his right to return to the pre-existing loan.

To support his argument that Form H-9 must be used, Watkins relies heavily on the Seventh Circuit's decision in *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006), where the court held that a lender, which had given the borrower both the H-8 and H-9 Model Forms of notice, violated TILA's disclosure requirements. Reiterating its prior determination that "hypertechnicality reigns in TILA cases," the court reasoned, "[w]here more than one reading of a rescission form

is 'plausible,' the form does not provide the borrower with a clear notice of what her right to rescind entail[s]." *Id.* at 764 (internal quotation marks omitted). Watkins urges that we apply a similarly strict standard in evaluating SunTrust's compliance with TILA and Regulation Z, including the model forms included in the Appendix to Regulation Z.

SunTrust acknowledges that Model Form H-9 contains "some language regarding the effect of rescission on the prior indebtedness," which it did not include in the disclosure that it provided to the Watkinses. But it contends that the additional language is language that "neither Congress nor the Federal Reserve Board deemed mandatory, as no requirement for it is provided either in TILA or Regulation Z." SunTrust argues that even Watkins' complaint "effectively" acknowledges that "he had received in the notice provided to him by [SunTrust] all of the information which TILA requires of a lender under the circumstances described." In addition, SunTrust argues that "TILA was not intended to be used as a hypertechnical loophole for borrowers to escape their contractual obligations." Notice of the right to rescind, it argues, need not be "perfect," so long as it substantially complies with the requirements of TILA and Regulation Z.[2]

We begin our analysis with a review of the statutory and regulatory language relating to the right of rescission and disclosure of the right.

TILA gives the borrower the right to rescind "any consumer credit transaction" in which the credit is secured by a

---

[2]The dissent assumes as "undisputed" that SunTrust "did not use the appropriate model form to provide notice to the Watkinses." *Post* at 20; *see also post* at 21. It then concludes that this "should end our intervention in this matter" because TILA demands absolute compliance. *Post* at 21. But the dissent's assumption is misplaced. SunTrust's entire argument on appeal rests on its contention that it did use an appropriate form, complying fully with TILA and Regulation Z. And in our opinion we conclude that it did.

lien on the borrower's home. 15 U.S.C. § 1635(a). And when "any consumer transaction" is so rescinded, TILA provides that (1) the borrower is relieved of any obligation to pay a "finance or other charge"; (2) the security interest created by the transaction becomes void; and (3) upon the lender's performance in returning money paid by the borrower and in voiding the security interest, the borrower must return to the lender any money paid to the borrower. *Id.* § 1635(b). Finally, TILA requires that the creditor "clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the [rescission] rights of the obligor under this section." *Id.* § 1635(a). The statute does not make any distinction between a consumer credit transaction that provides initial financing and a consumer credit transaction that refinances an existing loan. The right to rescind is made applicable to "any consumer credit transaction" and the effects of rescission are the same with respect to any form of such a transaction.

Regulation Z likewise makes no such distinction. It mandates that the notice of rescission include "[t]he effects of rescission as described in paragraph (d) of this section," 12 C.F.R. § 226.23(b)(1)(iv), and paragraph (d) simply parrots the statutory language, as described above. Consistent with the common understanding of rescission, the creditor must give back all fees received from the borrower and undo the security interest given with respect to the loan, and the borrower in turn must return the money it received. The parties are thus returned to the *status quo ante*.

Watkins' suggestion that the failure slavishly to follow the language of Form H-9 in giving notice of the right of rescission is a violation of TILA cannot be supported by the language of TILA or of Regulation Z. While TILA does indeed require the Federal Reserve Board to publish model disclosure forms "to *facilitate* compliance with the disclosure requirements," 15 U.S.C. § 1604(b) (emphasis added), it just as quickly provides that the lender need not use any such model

form, so long as the required information is provided, *id.* Indeed, the statute goes further, providing that the lender "shall be deemed to be in compliance with the disclosure provisions" *even if it modifies the Board's form* by "deleting any information *which is not required* by this subchapter." *Id.* (emphasis added). Consistent with these statutory provisions, the regulations require the use of a Board-drafted form "*or* a substantially similar notice." 12 C.F.R. § 226.23(b)(2) (emphasis added).[3]

Accordingly, SunTrust was not required to include in any notice the information contained in the two additional sentences included in Form H-9 for refinancing. Indeed, the two additional sentences are nothing more than a particularized restatement of what is contained in Form H-8, which is that the right to rescind applies to the entire consumer credit transaction. Just as an initial financing transaction may be rescinded, so may a refinancing be rescinded, and, as with any rescission, the effect of rescission is to return the parties to the same position they were in before the rescinded transaction was consummated.

Thus, because SunTrust's notice to the Watkinses fulfilled each requirement imposed by TILA and by Regulation Z— indeed, nearly verbatim—it is an unsustainable argument to maintain that its notice was in violation of TILA. *See Santos-Rodriguez v. Doral Mortg. Corp.*, 485 F.3d 12, 18 (1st Cir. 2007) (Model Form H-8 is sufficient for refinancing transactions); *Mills v. EquiCredit Corp.*, 172 F. App'x. 652, 656-57 (6th Cir. 2006) (same); *Veale v. Citibank*, 85 F.3d 577, 580 (11th Cir. 1996) (same).

---

[3]Despite the specific requirements and exceptions included in TILA and Regulation Z, the dissent maintains that SunTrust "should have provided" notice of rescission with Model Form H-9, implying, without citation, that something in TILA and Regulation Z requires the use of Model Form H-9 for refinancing with an original creditor. But as we point out, nothing in TILA or Regulation Z requires use of Form H-9 or use of the distinct language or information given in Form H-9.

Watkins argues that SunTrust's notice of the right of rescission incorrectly told the Watkinses that if they rescinded, "the entire transaction was canceled. It . . . did not tell Watkins that he could rely on his right to return to the pre-existing loan." The second sentence of this argument, however, does not follow from the first. As Watkins acknowledges, the notice advised the Watkinses of the right to rescind the *entire transaction*, which was a correct statement and was required by law. When an entire transaction is rescinded, however, the status quo before the transaction must be restored, including, in this case, the reinstatement of the prior loan.

By definition, a refinancing is the taking out of a *new loan to repay an existing loan*, hence *re*financing. The new loan can be taken out to replace the prior loan with one having a lower interest rate or one having a fixed rate as opposed to a variable rate. The refinancing can replace a longer term loan with a shorter term loan or a balloon-payment loan. And, of course, a refinancing can provide "cash out," which would increase the loan amount under the refinancing. But in any of these refinancing transactions, *the preexisting financing arrangement is extinguished and replaced by the new financing*.

Thus, when any such refinancing transaction is rescinded, the entire new loan transaction, including the security agreement, is voided, and the parties are returned to the *status quo ante*. But none of these details relating to particular terms of a refinancing and to the particularized effects of rescinding those terms need be disclosed under TILA or Regulation Z. The reversal of the terms of any particular form of refinancing flows from the more generalized right of a borrower to rescind the "entire transaction," as understood by Watkins. Thus when Watkins was told that he could rescind the entire refinancing transaction, he was told that all the aspects of the new transaction would be undone, and because the new transaction extinguished the prior financing, to rescind would require that his situation before the transaction be restored.

Even if we were to understand that the additional language contained in H-9 was somehow required by TILA, we would nonetheless find no violation here because the additional information included in Model Form H-9 was substantially included in the notice provided for in Model Form H-8. Model Forms H-8 and H-9 both describe in similar language the effects of rescission, using the language contained in TILA and Regulation Z. Form H-9, however, spells out further that rescission of a refinancing will essentially return the borrower to his pretransaction status such that the rescission "will not affect any amount that you presently owe." While rescission, by definition, includes restoration of the parties to their prior positions, this additional language in Form H-9 simply emphasizes that the previous loan and security interest in the property will be reinstated. We cannot conclude that the omission of this elaboration about the effects of a rescission results in a violation of TILA, which allows for substantial compliance with the rescission notice requirements. As we have held, TILA's regulations should be "reasonably construed and equitably applied." *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 819 n.4 (4th Cir. 2007). And this view is the interpretative approach adopted by most of the circuits. *See Santos-Rodriguez*, 485 F.3d at 16 ("Most courts have concluded that the TILA's clear and conspicuous standard is less demanding than a requirement of perfect notice"); *Veale*, 85 F.3d at 581 ("TILA does not require perfect notice; rather it requires a clear and conspicuous notice of rescission rights"); *Gambardella v. G. Fox & Co.*, 716 F.2d 104, 118 (2d Cir. 1983) ("TILA . . . does not require perfect disclosure"); *Smith v. Chapman*, 614 F.2d 968, 972 (5th Cir. 1980) ("Strict compliance does not necessarily mean punctilious compliance if, with minor deviations from the language described in the Act, there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation"); *cf. Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 568 (1980) ("*Meaningful* disclosure [under TILA] does not mean *more* disclosure. Rather, it describes a balance between competing considerations of complete disclosure and the need to avoid

information overload") (internal quotation marks and alterations omitted).

At bottom, we conclude that nothing in TILA requires a lender specifically to advise the borrower of the specific "effects" of rescinding a mortgage refinancing, as distinct from rescinding an initial mortgage financing. Because SunTrust's notice to the Watkinses, given in their refinancing transaction, included all of the "effects of rescission" that are mandated by TILA and Regulation Z, we conclude that the disclosure that SunTrust gave through use of Model Form H-8 satisfied the requirements of TILA and Regulation Z, even though the notice did not contain the additional language contained in Model Form H-9. Accordingly, we affirm the judgment of the district court.

*AFFIRMED*

WYNN, Circuit Judge, dissenting:

"Congress enacted [the Truth in Lending Act] in 1968, as part of the Consumer Credit Protection Act . . . to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . ." *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 53-54, (2004) (internal citations omitted); *see also Mourning v. Family Pub. Serv., Inc.*, 411 U.S. 356, 377 (1973) ("The Truth in Lending Act reflects a transition in congressional policy from a philosophy of 'Let the buyer beware' to one of 'Let the seller disclose[ ]'" and, in so doing "Congress expressly sought 'to . . . avoid the uninformed use of credit.'") (quoting 15 U.S.C. § 1601). 15 U.S.C. § 1635 requires creditors to "clearly and conspicuously disclose" the borrower's rescission rights under the Truth in Lending Act. 15 U.S.C. § 1635(a).

To that end, to enforce the disclosure requirements under the Truth in Lending Act, "Congress gave the debtor a right

to specific information and therefore defined 'injury in fact' as the failure to disclose such information." *White v. Arlen Realty & Dev. Corp.*, 540 F.2d 645, 649 (4th Cir. 1975). The Truth in Lending Act requires a lender to "clearly and conspicuously" disclose to the borrower the borrower's right to rescind and the length of the rescission period, as well as to provide the borrower with "appropriate forms . . . to exercise [the] right to rescind [a] transaction."[1] 15 U.S.C. § 1635(a). Additionally, the Act also requires creditors to disclose the effects of rescission. Regulation Z § 226.23(b)(1).

This Court has held that "to insure that the consumer is protected, as Congress envisioned, requires that the provisions of the Act and the regulations implementing it be absolutely complied with and strictly enforced." *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir. 1983) (holding that technical violation, even if merely a "minor variation in language and type size" from Truth in Lending Act requirements, imposes liability), *superseded on other grounds by statute*, 15 U.S.C. § 1640 (a)(2)(A), Pub.L. 104-12, May 18, 1995, 109 Stat. 161; *see also Huff v. Stewart-Gwinn Furniture Co.*, 713 F.2d 67, 69 (4th Cir. 1983) (holding that minor violations of Truth in Lending Act and Regulation Z impose liability even if, as creditor alleged, the consumer "was not misled and was given a meaningful and correct disclosure of crucial credit terms").

---

[1]Two footnotes in the majority opinion appear to suggest that there is a dispute as to whether SunTrust used the "appropriate form" in providing notice to the Watkinses. But neither the majority nor SunTrust disputes the underlying premises that Form H-9 is designed for existing borrowers; SunTrust provided the Watkinses notice by providing Form H-8 which is designed for new borrowers; and the Watkinses were existing borrowers. The dispute, if any, lies in the conclusion that arises from those premises. Whereas the majority holds that the notice provided by Form H-8 is close enough to meet the disclosure requirements of the Truth in Lending Act, this Court in *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir. 1983), made it plain that the Truth in Lending Act requires strict compliance. But, tellingly, the majority ignores our binding and controlling decision in *Mars* by not even citing to it.

It is important to point out that although this Court, in *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815 (4th Cir. 2007),[2] suggested that the Truth in Lending Act should be "reasonably construed and equitably applied," that holding did not and indeed could not overrule the binding precedent set by this Court in *Mars*. *See Am. Mortg. Network, Inc.*, 486 F.3d at 819 n. 4. "[A] panel of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court. Only the Supreme Court or this court sitting en banc can do that." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002) (citing *Mentavlos v. Anderson*, 249 F.3d 301, 312 n.4 (4th Cir. 2001)); *see also Jones v. Angelone*, 94 F.3d 900, 905 (4th Cir. 1996) ("we cannot, as a panel of the court, overrule the decision of another panel; only the en banc court may overrule a prior panel decision").

In *Mars*, this Court held that the Truth in Lending Act and its regulations must "be absolutely complied with and strictly enforced." Like our holding in *Mars*, other circuit courts have also required that the Truth in Lending Act and its regulations be absolutely complied with and strictly enforced. *See Handy v. Anchor Mortg. Corp.*, 464 F.3d 760, 764 (7th Cir. 2006) ("Truth in Lending Act does not easily forgive 'technical' errors.") (quotation marks omitted); *Smith v. Fid. Consumer Disc. Co.*, 898 F.2d 896, 898 (3rd Cir. 1990) ("Once the court finds a violation, no matter how technical, it has no discretion with respect to liability.") (quotation omitted); *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 704 (9th Cir.

---

[2]Unlike the present case, *Shelton* was an action concerning the procedural requirements for exercising the right to rescind. The issue in *Shelton* was whether the lender had an obligation to return the borrower's property per the Truth in Lending Act deadlines after the lender learned that the borrowers were unable to tender the loan proceeds to the lender. We affirmed the grant of summary judgment in favor of the lender because "[o]nce the trial judge . . . determined that [plaintiffs] were unable to tender the loan proceeds, the remedy of unconditional rescission was inappropriate . . . . [And, consequently,] [t]he trial court properly exercised its discretion in denying rescission." *Shelton*, 486 F.3d at 821.

1986) ("Technical or minor violations of [Truth in Lending Act] or Reg Z . . . impose liability on the creditor and entitle the borrower to rescind."); *Williamson v. Lafferty*, 698 F.2d 767, 768-69 (5th Cir. 1983) (holding that the failure to fill in rescission expiration date violates the Truth in Lending Act).

The Truth In Lending Act provides that the Federal Reserve Board:

> . . . shall publish model disclosure forms and clauses for common transactions to facilitate compliance with the disclosure requirements of this title [15 USCS §§ 1601 et seq.] and to aid the borrower or lessee in understanding the transaction by utilizing readily understandable language to simplify the technical nature of the disclosures. . . . Nothing in this title [15 USCS §§ 1601 et seq.] may be construed to require a creditor or lessor to use any such model form or clause prescribed by the Board under this section.

15 U.S.C. § 1604(b). The Federal Reserve Board, in promulgating regulations under this statute, recognized that the statute offered the lender the options of using the model disclosure forms or devising its own form to meet the disclosure requirements. Those regulations further emphasized the safe-harbor value of using the model disclosure forms under 12 C.F.R. § 226.23(b)(2), which has the force of law. That regulation provides that a lending institution shall disclose the right to rescind to the borrower through a "notice of a right to rescind" in two ways:

> 1) provide the "appropriate model form in Appendix H"; or
>
> 2) provide "a substantially similar notice."

*See* 12 C.F.R. § 226.23(b)(2).

By choosing to use the appropriate model disclosure form method, both the lender and borrower are put on notice that the form itself "*shall be deemed to be in compliance* with the disclosure provisions of [the Truth in Lending Act]." 15 U.S.C. § 1604(b) (emphasis added). Furthermore, in choosing the appropriate model disclosure form method, the lender has but one duty to fulfill to be deemed in compliance with the Truth in Lending Act – use the "appropriate model form."

To that end, the extensive analysis of the majority in determining if the disclosure requirements of the statute are met by SunTrust, which chose to use the appropriate model disclosure form method, seems beside the point. Indeed, the intervention of the judiciary should be quite limited and efficient when a lender chooses the appropriate model disclosure form method, for the inquiry need only concern whether a lender chose the appropriate form. If so, then the lender is deemed in compliance; if not, then it is not in compliance with the statute.

On the other hand, if a lender chooses to use the substantially similar notice method, then the document that it chooses to devise must meet the disclosure requirements of the statute. In that instance, an analysis such as the majority's would be necessary to determine if the devised document met the statutory disclosure requirements.

Here, SunTrust chose to use the "appropriate model form in Appendix H" disclosure method rather than to devise its own form to provide "substantially similar notice" required under the Truth In Lending Act. Thus, the dispositive issue on appeal is whether a lender that chooses to use the "appropriate model form in Appendix H" must use the appropriate form to comply with the Truth in Lending Act. Certainly yes. As it is undisputed that SunTrust did not use the appropriate model form, it follows that SunTrust was not in compliance with the Truth in Lending Act. It is a simple and straightforward result that is readily understood by both the lender and borrower. In

short, the intervention of courts should end when it is determined that a lender who chose to use the appropriate model disclosure form method used the wrong form.

That was exactly the level of judicial restraint that the Seventh Circuit exercised in *Handy*. There, the Seventh Circuit noted that even the lender's simultaneous provision of both a Form H-8 and a Form H-9 did not meet Truth in Lending Act's clear and conspicuous disclosure requirement, especially with regard to the "effects of rescission." *Id.* at 464 F.3d at 764. In *Handy*, the lender provided the borrower, at the time of her closing on a home loan, four copies of Form H-9 and one copy of Form H-8. The plaintiff argued that because the lender provided two different forms to her, the lender had failed to clearly and conspicuously disclose her right to rescind the transaction. In agreeing with the plaintiff, the Seventh Circuit explained:

> Even if Anchor is correct that a close parsing of Form H-9's "effects of rescission" statement might make it possible to reconcile it with the type of loan extended to Handy, the notice provided remains insufficient for Anchor to prevail. Where more than one reading of a rescission form is "plausible," the form does not provide the borrower with a clear notice of what her right to rescind entail[s].

*Id.* (quoting *Porter v. Mid-Penn Consumer Disc. Co.*, 961 F.2d 1066, 1077 (3rd Cir. 1992)).

Here, the fact that SunTrust did not use the appropriate model form to provide notice to the Watkinses is undisputed. SunTrust chose form H-8, which is the "appropriate model form in Appendix H" promulgated by the Federal Reserve Board for *new borrowers*, rather than form H-9, which is the "appropriate model form in Appendix H" for "*(Refinancing (with Original Creditor)." See* 12 C.F.R. § 226, Appx. H-8, H-9 (emphasis added). Because the Watkinses were existing

borrowers, SunTrust failed to use the appropriate model form to provide notice to the Watkinses as existing borrowers. It follows that SunTrust failed to absolutely comply with the disclosure provisions of the Truth in Lending Act.

As stated earlier, that should end our intervention in this matter. But even if we opt to interject additional unnecessary judicial action by analyzing whether the wrong form used under the "appropriate model form" disclosure method nonetheless met the "substantially similar notice" requirements, we would be constrained to hold that SunTrust has violated the Truth in Lending Act.

Here, the wrong form used by SunTrust under the "appropriate model form" disclosure method was Model Form H-8. Model Form H-8, which is for new borrowers, wrongly set forth the consequences that the Watkinses, as existing borrowers, would face if they chose to cancel the transaction within three business days. Model Form H-8 states:

> Your Right to Cancel.
>
> *You are entering into a transaction that will result in a mortgage, lien or security interest on/in your home.* You have a legal right under federal law to cancel this transaction without cost, within three (3) business days from whichever of the following events occurs last:
>
> (1) the date of the transaction, which is; May 7, 2007; or
>
> (2) the date you received your Truth in Lending disclosures; or
>
> (3) the date you received this notice of your right to cancel.

> If you cancel the transaction, *the mortgage, lien or security interest is also canceled.* Within (20) calendar days after we receive your notice we must take steps necessary to reflect the fact that the mortgage, lien, or security interest on/in your home has been canceled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

12 C.F.R. § 226, Appx. H-8 (emphases added). Thus, the Model H-8 Form wrongly informed the Watkinses that if they exercised their right to rescind, SunTrust would rescind the entire credit transaction, and the entire lien on the Watkinses' home. This was clearly an incorrect disclosure.

In contrast, the appropriate model disclosure form that SunTrust should have provided is Model Form H-9, which is the appropriate model form for a new extension of credit by an existing lender. Model Form H-9 states:

> Your Right to Cancel
>
> You are entering into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction. You have a legal right under federal law to cancel this new transaction, without cost, within three business days from whichever of the following events occurs last:
>
> (1) the date of this new transaction, which is May 7, 2007; or
>
> (2) the date you received your new Truth in Lending disclosures; or
>
> (3) the date you received this notice of your right to cancel.

> If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure the increase of credit. We must also return any money you have given to us or anyone else in connection with this new transaction.

12 C.F.R. § 226, Appx. H-9 (emphases added). Thus, Model Form H-9 would have correctly informed the Watkinses that if they exercised the right to rescind, then only the new extension of credit would be rescinded, leaving unaffected the prior lien of the pre-existing mortgage loan. Clearly, the borrower's right of rescission in a refinancing transaction with the same lender is substantially different from the right of rescission contained in the notice of cancellation that SunTrust provided to the Watkinses.

In sum, this case is a simple case requiring only judicial restraint to follow: the clear language and policy directions of Congress in enacting the Truth in Lending Act; the simple regulations of the Federal Reserve Board in providing a choice between using the safe-harbor method or devising a document to meet the Truth in Lending Act requirements; and the unequivocal and controlling holding of our decision in *Mars*. An analysis of whether the incorrect form used here was in substantial compliance is not warranted because SunTrust chose to use the appropriate model disclosure form method and failed to use the appropriate form. But not only did SunTrust violate the Truth in Lending Act by providing the wrong form to the Watkinses, the wrong form itself failed to meet the requirements of the "substantially similar notice" method (which SunTrust did not choose in any event). It follows that SunTrust failed to meet the requirements of the Truth in Lending Act, which we held under *Mars* must be

"absolutely complied with and strictly enforced."[3] Accordingly, I respectfully dissent.

---

[3]It is worthwhile to note that holding the lender accountable for providing the wrong Model Disclosure Form would not mean that the borrower escapes liability on the principal of the loan. Under 15 U.S.C. § 1635 (b), when a borrower rescinds, he is "not liable for any finance or other charge"; "any security interest . . . becomes void"; and "[w]ithin 20 days after receipt of a notice of rescission," the lender must "return to the [borrower] any money or property given as earnest money, down payment, or otherwise." 15 U.S.C. § 1635(6). In other words, although the borrower would be required to make payment to the lender for the loan's principal, the lender would not benefit from its own mistake by continuing to receive additional interest payments from the borrower. *See* 15 U.S.C. § 1640(a). By ignoring the consequences of the two choices under the Truth in Lending Act as expressed by regulation, the result reached by the majority not only ensures a regulatory windfall to the lender, but it also undermines the strong policy considerations that underlie the Truth in Lending Act.